(62 South. 492.)

No. 19,879.

BOARD OF DIRECTORS OF PUBLIC
SCHOOLS OF PARISH OF LIN-
COLN v. RUSTON STATE
BANK.

(June 9, 1913.)

*(Syllabus by Editorial Staff.)*

1. SCHOOLS AND SCHOOL DISTRICTS (§ 97*)—
PUBLIC SCHOOLS—BONDS—BUILDING.

Under Const. art. 281, as amended by Act
No. 197 of 1910, declaring that municipal cor-
porations, parishes, or school, drainage, road,
navigation, or sewerage districts, when author-
ized by a majority vote, may issue bonds to
purchase or construct systems of waterworks,
sewerage, drainage, navigation, lights, public
parks and buildings, a school district may is-
sue bonds for a school building; the word
"building" as used in the Constitution not be-
ing confined to a building in a public park,
but referring to any public building.

[Ed. Note.—For other cases, see Schools and
School Districts, Cent. Dig. §§ 224–232; Dec.
Dig. § 97.*

For other definitions, see Words and Phrases,
vol. 1, pp. 889–892; vol. 8, p. 7593.]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 97*)—
BONDS—BUILDING SITE.

As a school building cannot be construct-
ed without a site, the authority to issue bonds
extends to the issuance of bonds for the pur-
chase of a site for a school building.

[Ed. Note.—For other cases, see Schools and
School Districts, Cent. Dig. §§ 224–232; Dec.
Dig. § 97.*]

3. SCHOOLS AND SCHOOL DISTRICTS (§ 108*)—
BONDS—LIMIT OF TAXATION.

Const. art. 281, originally provided that
the governmental subdivisions named might is-
sue bonds to the extent of one-tenth of the as-
sessed valuation of property within their lim-
its, and levy special taxes provided said taxes
did not exceed five mills, while as amended by
Act No. 197 of 1910, authorizing school dis-
tricts to issue bonds, it provides that the gov-
erning authority of such subdivision shall levy
and collect annually in excess of all other
taxes, a tax sufficient to pay the interest and
principal falling due each year provided that
such special taxes shall not in any year ex-
ceed 10 mills on the dollar of the assessed val-
uation. *Held*, that the expression "such special
taxes" in the article as amended referred to a
sufficient tax, and was equivalent to the ex-
pression "said taxes" found in the original ar-
ticle, hence the imposition of a tax under an-
other constitutional provision will not affect the
right of the school district to levy a 10 mills
tax under the provision in question.

[Ed. Note.—For other cases, see Schools and
School Districts, Cent. Dig. §§ 235, 243, 257–
259; Dec. Dig. § 108.*]

Appeal from Fourth Judicial District
Court, Parish of Lincoln; John B. Holstead,
Judge.

Action by the Board of Directors of the
Public Schools of the Parish of Lincoln
against the Ruston State Bank. From a
judgment for plaintiff, defendant appeals.
Affirmed.

S. D. Pearce, of Ruston, for appellant. H.
B. Warren, of Ruston, for appellee.

PROVOSTY, J. The board of directors of
the public schools of the parish of Lincoln
submitted to the property taxpayers of
school district No. 5, at an election held for
that purpose, a proposition to levy on the
property of said district a tax of 7½ mills
for 27 years "for the purpose of purchasing
a site, constructing and equipping an agri-
cultural and domestic science high school
building in said district, title to which shall
vest in the public," and to incur debt and
issue bonds predicated upon said tax. This
it did under the provisions of article 281 of
the Constitution.

The election carried; and the Ruston State
Bank, the defendant herein, agreed to take
said bonds at an agreed price, but afterwards
refused to do so on the ground that they were
invalid.

It assigns as the grounds of invalidity that
said article 281 of the Constitution does not
authorize school districts to incur debt and
issue bonds at all, and, in any event, does not
authorize them to do so for purchasing the
site for a building, but that, even if it does,
the present tax and bond issue exceed the
limit of 10 mills allowed by said article.

Said article 281, as originally enacted, read
as follows:

"Municipal corporations, parishes, and drainage districts, the city of New Orleans excepted, when authorized to do so, by a vote of a majority in number and amount of the property taxpayers, qualified as electors under the Constitution and laws of this state, voting at an election held for that purpose, after due notice of said election has been published for thirty days in the official journal of the municipality or parish, and where there is no official journal, in a newspaper published therein, may incur debt, and issue negotiable bonds therefor, to the extent of one-tenth of the assessed valuation of the property within said municipal corporation, parish, or drainage district, as shown by the last assessment made prior to the submission of the proposition to the property taxpayers, as above provided, and may be authorized by the property taxpayers voting at said election, to levy and assess special taxes upon property subject to taxation in the parish, drainage district or corporation; provided, said taxes so imposed do not exceed five mills on the dollar of the assessed valuation in any one year, nor run for a greater number of years than the number named in the proposition submitted to the taxpayers. No bonds shall be issued for any other purpose than stated in the submission of the proposition to the taxpayers, and published for thirty days, as aforesaid, nor for a greater amount than therein mentioned; nor shall such bonds be issued for any other purpose than for paving and improving streets, roads and alleys, purchasing, or constructing a system of waterworks, sewerage, drainage, light, public parks and buildings, bridges and other works of public improvement, the title to which shall vest in the municipal corporation, parish or drainage district, as the case may be; nor shall such bonds run for a longer period than forty years from their date, or bear a greater rate of interest than five per cent per annum, or be sold by the municipal corporation, parish or drainage district issuing same for less than par.

"The municipal corporation, parish or drainage district issuing such bonds shall provide for the payment of the interest annually, or semiannually, and for the principal thereof at maturity; provided, that the total issue of bonds by any municipality, parish or drainage district, for all purposes shall never exceed ten per cent. of the assessed value of the property in such municipality, parish or drainage district. Provided, that drainage districts availing themselves of the provisions of this ordinance shall be limited to the rate of taxation herein fixed; and such districts shall be prohibited from levying contributions under the provisions of existing laws, and provided, further, that nothing herein contained shall prevent drainage districts from being established under the provisions of existing laws."

By Act No. 186, p. 417, of 1904, this article was amended by adding sewerage districts to the list of districts that might levy the tax and incur debt and issue the bonds in question. In stating the purposes for which the bonds in question might be issued the word "sewerage" was inserted but (by inadvertence, doubtless) the word "drainage" was left out.

By Act No. 122, p. 207, of 1906, this article was again amended, the amendment consisting in the addition of school districts to the list of districts that might avail themselves of its provisions; and in the further addition of a provision relative exclusively to drainage districts. The clause which states the purposes for which the bonds may be issued was made to read, as follows:

"Nor shall such bonds be issued for any other purpose than for paving and improving the streets, roads and alleys, purchasing or constructing systems of waterworks, sewerage, drainage, lights, public parks and buildings, bridges and other work of public improvement, the title to which shall vest in the municipal corporation, parish, school, drainage or sewerage districts, as the case may be."

[1] By Act No. 197 of 1910 the article was again amended; and this time was, in large measure, recast. The part bearing upon the case at bar was made to read as follows:

"Art. 281. Municipal corporations, parishes or school, drainage, subdrainage, road, navigation, 'or sewerage districts, the city of New Orleans excepted, hereinafter referred to as subdivisions,' when authorized to do so, by a vote of a majority in number and amount of the property taxpayers, qualified to vote under the constitution and laws of this state, who vote at an election held for that purpose, after due notice of said election has been published for thirty (30) days in the official journal of the municipal corporation or parishes, and where there is no official journal, in a newspaper published therein, may through their respective governing authorities, incur debt and issue negotiable bonds therefor, and each year while any bonds issued to evidence said indebtedness are outstanding, the governing authorities of such subdivision shall levy and collect annually, in excess of all other taxes, a tax sufficient to pay the interest, annually or semiannually, and the principal falling due each year, or such amount as may be required for any sinking fund provided for the payment of said bonds at maturity; provided, that such special taxes, for all purposes, shall not in any year exceed ten mills on the dollar of the as-

sessed valuation of the property in such subdivisions.

"No bonds shall be issued for any other purpose than that stated in the submission of the proposition to the taxpayers, and published for thirty days as aforesaid, or for a greater amount than therein mentioned; nor shall such bonds be issued for any other purpose than for constructing, improving and maintaining public roads and highways, paving and improving streets, roads and alleys, purchasing or constructing systems of waterworks, sewerage, drainage, navigation, lights, public parks and buildings, together with all necessary equipments and furnishing, bridges and other works of public improvement, the title to which shall vest in the subdivision creating the debt, as the case may be," etc.

The argument of the learned counsel, on the first above-mentioned ground of invalidity, is that the amendments which have added school districts to the list of districts which are authorized under this article to levy taxes and issue bonds have failed of their purpose—in other words, have miscarried, or flashed in the pan—because they have omitted to make a corresponding change in that clause of the article prescribing the kinds of works of public improvement for the construction, improvement, and maintenance of which the bonds are authorized to be issued; that this clause is, in terms, restrictive, "nor shall such bonds be issued for any other purpose," etc.; and that, among the purposes named, school buildings or sites for school buildings are not to be found.

To our mind it is perfectly obvious that the reason why school buildings were not specifically named was that the framers of the amendment considered that the words "buildings, together with all necessary equipments and furnishing, the title to which shall vest in the subdivision creating the debt"—i. e., in the school district—were sufficiently comprehensive to include school buildings.

Counsel suggest that the punctuation, by which the word "buildings" is connected, or set apart, in the sentence with "public parks," indicates that the buildings meant are public park buildings, or buildings in public parks, and none other. According to this, a parish could not take advantage of this article for constructing a courthouse or jail, or a town for constructing a town hall, except under the guise of a public park building or in a public park.

[2] Since a school building cannot be constructed without a site to put it on, we think that authority to construct the building necessarily carries with it authority to buy the site.

[3] The 10 mills limit is said to have been exceeded, because a tax of 5 mills for school purposes has already been imposed under article 232 of the Constitution authorizing taxation for school purposes.

The language of article 281 originally was that the governmental subdivisions named were authorized to levy special taxes " * * * provided, said taxes" did not exceed five mills. In the amendment this language was changed to "shall levy, in excess of all other taxes, a sufficient tax; * * * provided, that such special taxes, for all purposes, shall not exceed ten mills."

The expression "said taxes," found in the original article, necessarily had reference to the "special taxes" which the article authorized to be levied; and the expression "such special taxes," found in the amended article, has the same reference. True, the plural form, "such special taxes," does not adapt itself grammatically to the singular antecedent, "a sufficient tax," but there is no other antecedent for it in the sentence. Such other antecedent cannot be found in "taxes," in the phrase "in excess of all other taxes," for the taxes referred to in this phrase are not special taxes, but all taxes in general, and, the expression "such special taxes" cannot possibly be held to have reference to taxes in general.

Judgment affirmed