FOURNET, Justice.
 

 This suit was instituted by numerous citizens and property taxpayers of Caddo Parish to have the action taken by the Caddo Parish School Board on May 16, 1947, creating Consolidated School District No. 2 declared null and void and to enjoin the issuance and sale of the bonds authorized by the taxpayers of the district in an election held on June 24, 1947.
 

 The basic allegations of the petition are, substantially, that the Caddo Parish School Board by resolution of May 16, 1946, and without authority of law, purportedly created Consolidated School District No. 2, comprising School Districts Nos. 4, 5, and 9, as well as other property not embraced within any school district, and called a special election to pass upon the authorization of a $1,400,000 bond issue for the new district; that at the election held on June 24, 1947, this issue passed, in both numbers and value of assessments although at that time School Districts Nos. 4, 5, and 9 still existed not only as political subdivisions of the state, with their power to issue bonds and levy taxes, but the outstanding bonded indebtedness of School District No. 4 at that time amounted to $25,000, the payment of which was insured by the levy of an ad valorem tax on all taxable property within the district; the outstanding bonded indebtedness of School District No. 9 amounted to $16,000,'payable out of a 4 mill tax levy; and the property taxpayers of District No. 5 had voted in 1944*10 pay a 2 mill tax for a period of 6 years for the support of their schools although there was then no outstanding bonded indebtedness in this district. The plaintiffs also attacked the constitutionality of the action of the school board in creating Consolidated School District No. 2.
 

 It appears further that while this bond issue was carried in the entire district by a vote of 559 in favor and 402 against, with an assessment of $1,193,284.22 in favor to an assessment of $1,140,976.71 against, the vote in Districts Nos. 4, 5, and 9 were as follows: District No. 4, 28 property taxpayers with assessments totalling $83,305 voted in favor while 49 with assessments totaling $67,218 voted against*; District No. 5, 8 property taxpayers with assessments totalling $8,320 were in favor of the issue while 52, with assessments of $98,-307.50, were against; District No. 9, 4 tax
 
 *441
 
 payers with assessments of $2,035 were for and 106 taxpayers with assessments of $178,797.99 were against. Also, when the Caddo Parish School Board first created Consolidated School District No. 2 by resolution dated April 3, 1946, and proposed to the taxpayers that they assume the outstanding bonded indebtedness of the districts involved and authorize the issuance of additional bonds, this measure was defeated at the special election called for that purpose and at the meeting held on May 16, 1947, when the present Consolidated School District No. 2 was created, the board formally annulled and set aside the resolution creating the former consolidated district.
 

 By way of special defense the school board urged (1) that the plaintiffs were without right to proceed by injunction in this case, their remedy being under the Intrusion Into Office Statute; and (2) exceptions of no cause and no right of action based on the contention that Act No. 149 of 1934, under which the school board acted in creating Consolidated School District No. 2, was not repealed by the adoption of Act No. 190 of 1936, amending Act No. 152 of 1920; in the alternative, that if the court concludes Act No. 149 of 1934 was repealed, then (3) that Act No. 152 of 1920 as amended by Act No. 190 of 1936 is unconstitutional in that its object is broader than its title.
 

 These preliminary pleadings having been overruled, the board answered admitting the allegations of fact contained in the petition and as set out hereinabove and it appealed to this court when the trial judge on the motion of the plaintiffs for a judgment on the pleadings rendered judgment decreeing the action of’the board in creating Consolidated School District No. 2 illegal, null, and void, as well as the election authorizing the $1,400,000 bond issue, and enjoined the issuance and negotiation of these bonds.
 

 The first defense urged by the defendant is based on the holdings in the cases of Chicago, St. L. & N. O. R. Co. v. Town of Kentwood, 49 La.Ann. 931, 22 So. 192, and Soniat v. White, 155 La. 290, 99 So. 223, to the effect that the legality .of a political subdivision of the state cannot be collaterally attacked, it being the defendant’s contention that Consolidated School District No. 2, if not in fact a de jure it is a de facto political subdivision, and as such it is clothed with all of the power and authority of a de jure district until its existence has been questioned by the state through its proper officers under the Intrusion Into Office Statute, Act No. 102 of 1928.
 

 The answer to this contention lies in the fact that under the provisions of subsection (n) of Section 14 of Article XIV of the Constitution, and Section 43 of Act No. 46 of the Extra Session of 1921, the absolute right is given to “any person in interest * * * for any cause” to contest the legality of any election, bond issue,
 
 *443
 
 or tax authorized under Section 14 of Article XIV of the Constitution within 60 days from the date of the promulgation of the results of the election held for that purpose, after which time the issuance of the bonds, the legality thereof, and the taxes necessary to pay the same shall be conclusively presumed and no court shall thereafter have the authority to inquire into such matters.
 

 The plaintiffs, being resident property taxpayers of the district in controversy, are persons at interest within the meaning and contemplation of the foregoing constitutional provision and are, therefore, entitled to contest the legality of the election and the bond issue “for any cause.” Furthermore, the plaintiffs in this case have specifically attacked the legality of Consolidated School District No. 2 on the grounds set out above and in their prayer they ask that the district be held to have been illegally created and, as a consequence, that the election held in the territory to authorize the issuance of the bonds for its support be likewise held to be null and void and the issuance and negotiation of these bonds enjoined.
 

 It necessarily follows that since the factual allegations contained in the petition have been admitted by the defendant, we have only to determine whether the legal issues raised in connection with such facts are well founded and support the conclusion reached by the trial judge that the district was illegally created and all proceedings thereafter are null and void.
 

 In order to clearly understand, the issues that are raised under the pleadings and the other pleas of the defendant it is necessary to give a brief history and analysis of the several acts adopted by the legislature of this state relative to the creation of school districts, • their merger and consolidation.
 

 In 1920 the legislature by its Act No. 152 repealed all laws on the subject matter in conflict with the provisions of the new act and particularly Act No. 81 of 1918 and Act No. 17 of 1914, which acts gave the parish school boards the power to create school districts at any time and to compose them of either an entire parish, a ward, two or more wards, parts of two or more wards, part of an existing school district, parts of two or more existing school districts, or any other portion of a parish. Act No. 152 of 1920 authorized the parish .school boards in connection with their powers of special taxation for school purposes to create school districts and constituted these boards the governing bodies of the districts created by them with exclusive power to order, conduct, and hold special school tax elections therein and to do all things necessary in the premises, but Section 2 of this act specifically prohibits the creation of a district “embracing the whole or any part of the territory of another district.”
 

 
 *445
 
 In 1922 the legislature adopted its Act No. 33 which, according to its title, is an act “To provide for the merging or consolidating of School Districts,” and which, according to its provisions, so far as they are pertinent here, it authorizes school boards “upon their own initiative to merge or consolidate two or more school districts into one,” (Section 1), and repealing all laws or parts of laws in conflict therewith. Section 2.
 

 In the meanwhile, in March of 1922, the Winn Parish School Board created a new school district by embracing therein territory forming a part of other school districts and this court in 1924 held that such action was null and void, being in contravention of Section 2 of Act No. 152 of 1920. Hinton v. Winn Parish School Board, 155 La. 666, 99 So. 523.
 

 Subsequent to the passage of Act No. 33 of 1922, and in the face of its very clear provision permitting the merger or consolidation of two or more school districts into one, this court had occasion to review the action of the Bienville Parish School Board in enlarging a previously existing school district by including, in addition to the territory of this previous school district, the territory of other school districts (Woodard v. Bienville Parish School Board, 169 La. 831, 126 So. 207, 209) and the court held that this could be done because Section 2 of Act No. 152 of 1920 had, by implication, been repealed and superseded by the provisions of Act No. 33 of 1922. In this case the court observed: “In the Hinton case, supra, we construed the language to mean that the school board could not create new school districts within a parish school district where such newly created districts overlapped existing districts, in view of Act No. 152 of 1920. We would adhere to that interpretation of the statute of 1920 were the statute still in force.”
 

 The legislature, nevertheless, in 1934 adopted its Act No. 149 empowering the parish school boards of the state “upon their own initiative, to create one or more school districts within their respective parishes, to be known as Consolidated School Districts, by including therein two or more school districts, and they may also include therein such other territory as they may determine not embraced within the boundaries of any other school district.” Section 1.
 

 At its very next session, however, in 1936, it adopted Act No. 190 which amended and re-enacted Section 2 of Act No. 152 of 1920 by tracking the identical language used in the previous section but adding the provision that “whenever there shall be a sudden increase in the population of a portion of a previously created school district, by reason of industrial or oil development, the Parish School Board of a parish, with the approval of the State Board and Tax Commission may create a school sub-district, in which bond issues and special taxes may be voted as now provided by
 
 *447
 
 law for school districts; and after the. creation of such school sub-district, the property therein shall be subject to taxation for the retirement and payment of bonds and special taxes previously voted and levied in the old district, and such properties shall also be subject to taxation for the retirement and payment of bond issues and special taxes thereafter voted by the qualified voters of such school sub-district.” The repealing clause of this act provides that “all laws or parts of laws in conflict be, and the same are, hereby repealed.” Section 2.
 

 It appears from the foregoing, therefore, that when the Caddo Parish School Board undertook to create Consolidated School District No. 2 by including therein School Districts Nos. 4, 5, and 9, as well as other property not then embraced in any school district, there was on the statute books of this state this law specifically prohibiting such action. Counsel for the defendant, however, both orally and in brief, argue that since the 1936 act does not specifically repeal the 1934 act this court, under the principle that repeals by implication are not favored, should construe the 1920 act as amended in such a way as to permit both it and the 1934 act to stand, particularly since the school boards throughout the state, availing themselves of the provisions of the 1934 act, have created many consolidated school districts that have issued bonds that are still outstanding. Counsel argue, according to their brief, that this can be done because “a careful reading of the 1920 statute shows that, in reality, it is not in conflict with the Act of 1934. We point out to your Honor that the literal language of the 1920 act prohibits the creation of a school district embracing the whole or a part of the territory of an existing district. The school board in this case has attempted to do neither of those things. A part of the territory of no school district has been included in the new district. The whole of several districts have been consolidated so as to form the new district but the prohibition of the 1920 statute, as we understand it, does not ápply to this situation. The purpose of the 1920 act was to prevent the creation of a new district superimposed on the structure of the old district. In other words, the intention of the 1920 Act was to prohibit the creation of sub-districts either by taking a portion of the existing district or, as we have said, by super-imposing the new structure upon the old.”
 

 We fail to appreciate the logic of this reasoning for it appears to us that when the legislature of 1936 adopted its Act No. 190 specifically prohibiting the creation of any school district so as to embrace the whole or any part of the territory of another district unless the procedure set out in the amended Section was followed, necessarily superseded that part of the act of 1934 granting the school boards the power to create so-called consolidated school districts by including
 
 *449
 
 therein two or more school districts and also such other territory not embraced within the boundaries of any district as they might see fit.
 

 The legislature of 1940, obviously recognizing the effect of the 1936 act and the illegal actions of the various school boards throughout the state in consolidating school districts under the 1934 act, adopted its Act No. 313 wherein it provided that “where the Parish School Board of any parish in the State of Louisiana, in contravention of the existing statutes, has heretofore created a school district in such parish, which school district contains within its boundaries an existing school district having outstanding existing bonded indebtedness, and where thereafter an election has been held in said newly created school district on the question of the issuance of bonds of said school district and the results of said election have been canvassed by said School Board and such election has been found to have resulted in favor of the issuance of such bonds and the results of such election have been duly promulgated in a newspaper published in said school district or in said parish, the act of said School Board in creating such school district is hereby approved, validated and ratified, such school district is hereby recognized and declared to be a valid and legally existing school district, and said School Board is hereby authorized to proceed with the authorization, sale and issuance of such bonds in accordance with the pertinent statutes and such bonds when so issued shall be the valid and legally binding obligations of such school districts.”
 

 The legislature did not, as claimed by the defendant, repeal Act No. 190 of 1936 or give the school boards the power to continue their practice of consolidating districts under the 1934 act by this legislature, for Act No. 313 of 1940 applies only to such districts as had been created prior to the adoption of that act.
 

 This leaves for our consideration rhe defendant’s alternative plea, that is, that Act No. 152 of 1920 is unconstitutional because “the body of the statute is broader than its title,” in that the object of the act as expressed in its title authorizes the creation of school districts without restriction whereas in Section 2 in the body of the act there is contained “a prohibition against the creation of school districts in certain contingencies,” such object not being contained in the title, in contravention of Section 16 of Article III of the Constitution of 1921 providing that “Every law enacted by the Legislature shall embrace but one obj ect, and shall have a title indicative of such object.”
 

 Clearly there is no merit to this contention for all the constitution requires is that the title of an act in general terms be indicative of its object. It is not required that it be a complete index to every section of the statute and whatever is germane or incidental to the purpose need not
 
 *451
 
 be embraced therein. Peoples Homestead & Savings Ass’n v. Masling, 185 La. 800, 171 So. 36; State v. Martin, 192 La. 704, 189 So. 109; Jackson v. Hart, 192 La. 1068, 190 So. 220; Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508; and State v. Pete, 206 La. 1078, 20 So.2d 368. The object of the act here as expressed in its title is to authorize the school boards of the several parishes of the state in connection with their power of special taxation for school purposes to create school districts. The manner of their creation and the restrictions placed on the school boards with respect thereto are all matters that are germane and cognate to the subject matter and need not be stated in the title.
 

 For the reasons assigned the judgment of the lower court is affirmed.
 

 O’NIELL, J., absent.